UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

F. SCHUMACHER & CO.,                     :

                    Plaintiff,           :

     -against-                           :

BARTH & DREYFUSS OF                      :
CALIFORNIA, INC.,
                                         :
                    Defendant.
                                         :
------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-9-07
```

05 Civ. 2226 (RMB)(HBP)

REPORT AND
RECOMMENDATION

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE RICHARD M. BERMAN, United States

District Judge,

I.  Introduction

          On September 1, 2005, the Honorable Richard M. Berman,

United States District Judge for the Southern District of New

York, referred this matter to me to conduct an inquest and to

issue a report and recommendation concerning plaintiff's damages.

          Pursuant to the Order of Reference, I issued a Schedul-

ing Order on December 9, 2005, directing plaintiff to serve and

file proposed findings of fact and conclusions of law by January

13, 2006 and directing defendant to submit responsive materials

by February 13, 2006.  My December 9, 2005 Scheduling Order

further provided:

conclusions of law on the basis of plaintiff's submissions alone and respectfully recommend that judgment be entered against defendant in favor of plaintiff in the amount of $208,852.85 plus costs as taxed by the Clerk of the Court.

## II.   Findings of Fact

### A.   Nature of Action

1.   This is an action against plaintiff's former licensee Barth & Dreyfuss of California, Inc. ("B&D") for (i) breach of contract, (ii) infringement of plaintiff's trademarks, in violation of Sections 32 (1) and 43(a) of the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. §§ 1114(1), 1125(a); (iii) false designation of origin, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iv) unfair competition under the common law of New York; and (v) infringement of plaintiff's registered copyrights, in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. Since plaintiff has submitted proposed findings of fact and conclusions of law addressed only to plaintiff's damages in connection with its breach of contract claim, I consider plaintiff's other claims to be abandoned and do not address them.

3

B.  The Parties

2.  Plaintiff, F. Schumacher & Co. ("Schumacher") is a
corporation organized and existing under the laws of the State of
New York, with its principal place of business at 79 Madison
Avenue, New York, New York 10016 (Compl. ¶ 6[1]).

3.  Since 1889, Schumacher has engaged in the sale of a
wide range of home furnishing products and accessories.  Today,
Schumacher is a leading designer and marketer of decorative
fabrics, wallpaper, carpeting and area rugs.  Schumacher also
manufactures and markets an array of home fashions including
bedroom ensembles, window treatments and decorative accessories
(Compl. ¶ 8).

4.  B&D is a corporation organized and existing under
the laws of the State of California, with its principal place of
business at 2255 North Ontario Street, Burbank, California 91504
(Compl. ¶ 7).

---

[1]As a result of B&D's default, all the allegations set forth
in the complaint, except as to the amount of damages, must be
taken as true.  Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d
849, 854 (2d Cir. 1995); Greyhound Exhibitgroup, Inc. v. E.L.U.L.
Realty Corp., 973 F.2d 155, 158-59 (2d Cir. 1992); Trans World
Airlines, Inc. v. Hughes, 449 F.2d 51, 69-70 (2d Cir. 1971),
rev'd on other grounds, 409 U.S. 363 (1973); Wing v. E. River
Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995); Deshmukh v.
Cook, 630 F. Supp. 956, 959 (S.D.N.Y. 1986).

4

C.   Schumacher's Marks
     and Copyrights

5.   Schumacher markets its home furnishing products and
accessories under a number of well-known trademarked brands, each
aimed at a specific customer base.  Schumacher licenses the use
of one of those trademarks, "WAVERLY," to manufacturers of home
furnishings and accessories as part of a licensing program
designed to bring a coordinated product assortment to consumers
(Compl. ¶ 9).

6.   In the mid-1920's, Schumacher began using the
"WAVERLY" mark in connection with decorative fabrics.  Since the
1930's, Schumacher has extended the "WAVERLY" brand, first to
wallpaper and home fashions, and later to other home furnishings
by licensing use of the "WAVERLY" mark and various decorative
fabric designs to leading manufacturers for products including
carpet, bedding, window treatments, furniture, decorative acces-
sories, lamps, dinnerware and paint (Compl. ¶ 11).

7.   In late 2000, Schumacher further extended the
"WAVERLY" brand by creating the "WAVERLY GARDEN ROOM" line of
bedding and coordinates.  Schumacher's "WAVERLY GARDEN ROOM"
products consist of a variety of floral patterns, as well as
complementary plaids, stripes and gingham checks.  Schumacher's
"WAVERLY GARDEN ROOM" products are sold exclusively in Target
retail stores (Compl. ¶ 14).

8.    Schumacher has also created an array of original decorative fabric designs for use in connection with its "WAVERLY" and "WAVERLY GARDEN ROOM" lines of home furnishings and accessories.  Schumacher has registered many of these fabric designs with the United States Copyright Office (Compl. ¶ 20).

9.    Schumacher has registered copyrights for the following fabric designs that it sells in connection with its "WAVERLY" brand:  (1) "Tahiti," (2) "La Frutta" and (3) "Lyon." These decorative fabric designs are referred to collectively herein as the "Waverly Copyrighted Designs" (Compl. ¶ 21).

10.    Schumacher has also registered copyrights for the following fabric designs that it sells in connection with its "WAVERLY GARDEN ROOM" brand:  (1) "Bramasole" (also known as "Harbor Square at Target") and (2) "Norfolk Rose" (also known as "Vintage Rose at Target").  These decorative fabric designs are referred to collectively herein as the "Waverly Garden Room Copyrighted Designs" (Compl. ¶ 22).

D.    Schumacher's License
      Agreements with B&D

11.    From 2000 to 2003, Schumacher and B&D executed three separate license agreements (Declaration of Corinne P. Kevorkian, Esq., sworn to January 12, 2006 ("Kevorkian Decl."), ¶ 2).

6

1. The Waverly Garden
Room License Agreement

12.  On July 18, 2000, Schumacher, its Waverly Life-style Group Division and B&D entered into an agreement pursuant to which Schumacher granted B&D a license to use plaintiff's trademark "WAVERLY GARDEN ROOM" and the Waverly Garden Room Copyrighted Designs in connection with the manufacture and sale of kitchen and tabletop accessories for exclusive distribution in Target retail stores throughout the United States (the "Waverly Garden Room License Agreement") (Kevorkian Decl. ¶ 3 and Exhibit 1, thereto).

13.  As part of the Waverly Garden Room License Agreement, B&D agreed to pay Schumacher royalty fees, including annual guaranteed minimum royalties, in connection with B&D's sale of kitchen and tabletop accessories bearing plaintiff's "WAVERLY GARDEN ROOM" mark and plaintiff's Waverly Garden Room Copyrighted Designs (Kevorkian Decl. ¶ 4 and Exhibit 1 thereto at ¶ 8.)

14.  Schumacher and B&D amended the Waverly Garden Room License Agreement on December 10, 2002 and December 23, 2003.  As amended, that Agreement expired on December 31, 2004  (Kevorkian Decl. ¶ 5 and Exhibit 2 thereto).

7

2.   The Tahiti
     License Agreement

15.   On October 7, 2002, Schumacher and B&D entered
into a second agreement pursuant to which Schumacher granted B&D
a license to use one of Schumacher's copyrighted fabric designs -
- the Tahiti design in the "Natural" color only -- in connection
with the manufacture and sale of kitchen and tabletop accessories
for exclusive distribution in Bed Bath & Beyond stores throughout
the United States (the "Tahiti License Agreement") (Kevorkian
Decl. ¶ 6 and Exhibit 3 thereto).

16.   As part of the Tahiti License Agreement, B&D
agreed to pay Schumacher royalty fees in connection with B&D's
sale of kitchen and tabletop accessories bearing Schumacher's
Tahiti design (Kevorkian Decl. ¶ 7 and Exhibit 3 thereto at ¶ 6).

17.   The parties amended the Tahiti License Agreement
on November 14, 2003.  As amended, that Agreement expired on
December 31, 2004 (Kevorkian Decl. ¶ 8 and Exhibit 4 thereto).

3.   The Waverly
     License Agreement

18.   On January 3, 2003, Schumacher and B&D entered
into a third agreement pursuant to which Schumacher granted B&D a
license to use Schumacher's "WAVERLY" mark and the Waverly
Copyrighted Designs in connection with the manufacture and sale
of kitchen and tabletop accessories for exclusive distribution in

8

Linens 'n Things retail stores throughout the United States (the
"Waverly License Agreement") (Kevorkian Decl. ¶ 9 and Exhibit 5
thereto).

        19.   As part of the Waverly License Agreement, B&D
agreed to pay Schumacher royalty fees, including annual guaran-
teed minimum royalties, in connection with B&D's sale of kitchen
and tabletop accessories bearing plaintiff's "WAVERLY" mark and
plaintiff's Waverly Copyrighted Designs.  B&D also agreed to pay
Schumacher advertising fees equal to two percent (2%) of net
sales derived from B&D's sale of the kitchen and tabletop acces-
sories bearing Schumacher's "WAVERLY" mark and plaintiff's
Waverly Copyrighted Designs (Kevorkian Decl. ¶ 10 and Exhibit 5
thereto at ¶¶ 6.6, 8).

        20.   The Waverly License Agreement expired on December
31, 2004 (Kevorkian Decl. ¶ 11).

        E.   B&D's Failure to Make
             the Payments Required by
             Its Agreements with Schumacher

        21.   In late August 2004, Schumacher's auditor reviewed
B&D's accounts and records.  The audit examined B&D's gross sales
derived from the sale of licensed goods, and royalty payments due
to Schumacher under the Waverly Garden Room License Agreement,
Tahiti License Agreement and Waverly License Agreement (collec-

tively, the "License Agreements"), from the inception of the License Agreements through June 30, 2004 (Kevorkian Decl. ¶ 12).

22.   The August 2004 audit disclosed that B&D had underpaid Schumacher under two of the three License Agreements as a result of unreported gross sales or calculation errors. Specifically, the audit disclosed a total deficiency of $45,015, comprised of $17,993 due under the Waverly License Agreement ($16,211 in royalties and advertising on unreported sales and $1,782 in unpaid minimum royalties for the second quarter of 2004) and $27,022 due under the Waverly Garden Room License Agreement ($20,272 in royalties on unreported sales and a $6,750 underpayment for the first quarter of 2001) (Kevorkian Decl. ¶ 13).

23.   The $17,993 and $27,022 deficiencies due, respectively, under the Waverly License and Waverly Garden Room License Agreements comprised at least five percent due to Schumacher in at least one reporting period under those agreements (Kevorkian Decl. ¶ 14).

24.   The cost of plaintiff's 2004 audit was $7,294.12 (Kevorkian Decl. ¶ 15).

25.   Pursuant to the Waverly Garden Room License and Waverly License Agreements, B&D was required to pay Schumacher for the $45,015 deficiency disclosed by the 2004 audit.  B&D has

10

failed to pay that amount. (Kevorkian Decl. ¶ 16, Exhibit 1
thereto at ¶ 9 and Exhibit 5 thereto at ¶ 9).

26.  Pursuant to the Waverly Garden Room License and
Waverly License Agreements, B&D was also required to pay the cost
of the 2004 audit because the audit had disclosed that B&D
underpaid the amount of royalties due to Schumacher by at least
five percent in at least one reporting period.  B&D has failed to
pay for the cost of the 2004 audit, which totaled $7,294.12
(Kevorkian Decl. ¶ 17, Exhibit 1 thereto at ¶ 9 and Exhibit 5
thereto at ¶ 9).

27.  In addition to the deficiency amounts disclosed by
the 2004 audit, Schumacher also discovered that B&D failed to pay
Schumacher the advertising contribution costs due on previously
reported sales under the Waverly License Agreement for the first
and second quarters of 2004; this deficiency totaled $9,555
(Kevorkian Decl. ¶ 18).

28.  B&D also failed to pay plaintiff the minimum
royalties remaining due under the Waverly Garden Room and Waverly
License Agreements for the third and fourth quarters of 2004;
this deficiency totaled $108,628 (Kevorkian Decl. ¶ 19).

29.  On January 6, 2005, and again on February 10,
2005, Schumacher advised B&D in writing that it was in breach of
the License Agreements and demanded, among other things, that B&D
immediately (i) pay all amounts due to Schumacher in connection

with the 2004 audit in the amount of $45,015; (ii) pay for the cost of the 2004 audit, in the amount of $7,294.12; (iii) pay the amount due to Schumacher in connection with advertising contribution fees under the Waverly License Agreement for the first and second quarters of 2004, in the amount of $9,555; and (iv) pay minimum royalties due to Schumacher under the Waverly Garden Room and Waverly License Agreements for the third and fourth quarters of 2004, in the amount of $108,628.  B&D failed to respond to Schumacher's letters (Kevorkian Decl. ¶ 20 and Exhibits 6-7 thereto).

F.  **B&D's Default**

30.  On February 17, 2005, Schumacher commenced this action by filing the summons and complaint (Affidavit of Natasha N. Reed, Esq., sworn to July 14, 2006 ("Reed Aff."), ¶ 4).

31.  On February 18, 2005, copies of the complaint and summons were personally served on B&D by hand delivery to Elaina Bou of CT Corporation Systems, B&D's authorized agent, at 111 Eight Avenue, New York, New York 10011 (Reed Aff. ¶ 5).

32.  On February 24, 2005, the Affidavit of Service was filed with the Clerk of the Court (Reed Aff. ¶ 6).

33.  B&D has failed to answer or otherwise respond to the complaint.  B&D has failed to appear and has displayed no interest in participating in this action (Reed Aff. ¶¶ 7, 9).

34.   On June 20, 2005, the Clerk of this Court entered a Certificate of Default against defendant pursuant to Rule 55(a) of the Federal Rules of Civil Procedure and Local Civil Rule 55.1 (Reed Aff. ¶ 11 and Exhibit D thereto).

III.   Conclusions of Law

35.   The Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).   In addition, because there is diversity of citizenship between the parties to this action and the matter in controversy exceeds $75,000, the Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

36.   Venue is proper in this District pursuant to 28 U.S.C. §1391 (b) and (c) because a substantial part of the events or omissions giving rise to Schumacher's claims occurred in this District.   In addition, B&D has also consented to the jurisdiction of this Court for the resolution of any dispute in connection with the License Agreements at issue in this case (Kevorkian Decl. Ex. 1 thereto at ¶ 15.10, Exhibit 3 thereto at ¶ 14 and Exhibit 5 thereto at ¶ 15.10).

37.   B&D is doing and transacting business in this District, has committed tortious acts within this District, and is otherwise subject to the jurisdiction of the Court.   B&D has a

13

presence or engages in the solicitation of business in the State

of New York, derives substantial revenue from the sale of goods

in the State of New York and has committed acts causing injury to

plaintiff within the State of New York.  Defendant's acts confer

in personam jurisdiction over it.

    B.   Breach of Contract

       38.  B&D has breached its three License Agreements with
Schumacher by refusing to pay Schumacher for all deficiency
amounts disclosed by the 2004 audit, which total $45,015.

       39.  B&D has breached the Waverly Garden Room and
Waverly License Agreements by refusing to pay for the costs of
the 2004 audit which total $7,294.12.

       40.  B&D has breached the Waverly License Agreement by
refusing to pay Schumacher advertising fees for the first and
second quarters of 2004, which total $9,555.

       41.  B&D has breached the Waverly Garden Room and
Waverly License Agreements by refusing to pay Schumacher the
minimum royalties remaining due for the third and fourth quarters
of 2004, which total $108,628.

14

## C. Schumacher's Damages

42.   B&D is liable to Schumacher for all deficiency sums disclosed by the 2004 audit of B&D's accounts and books, namely $45,015.

43.   B&D is liable to Schumacher for the cost of the 2004 audit, namely $7,294.12.

44.   B&D is liable to Schumacher for Schumacher advertising contribution costs due under the Waverly License Agreement for the first and second quarters of 2004, namely $9,555.

45.   B&D is liable to Schumacher for the minimum royalties remaining due under the Waverly Garden Room License Agreement and Waverly License Agreement for the third and fourth quarters of 2004, namely $108,628.

46.   Interest is recoverable in connection with Schumacher's breach of contract claim at the annual rate of nine percent.  N.Y. C.P.L.R. §§ 5001(a), 5004.

47.   Interest shall be computed from the earliest ascertainable date the cause of action existed to the date the judgment is entered.  N.Y. C.P.L.R. §5001(b)-(c).

48.   By reason of the foregoing, B&D is liable to Schumacher in the amount of $170,492.12, plus interest at nine percent from January 6, 2005 (the date that Schumacher first notified B&D of its breaches), for a total, as of July 9, 2007, of $208,852.85.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respect-
fully recommend that Schumacher's motion for a default judgment
be granted and that final judgment be entered against B&D in the
amount of $208,852.85 plus costs as taxed by the Clerk of the
Court.

V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have ten
(10) days from the date of this Report and Recommendation to file
written objections.  See also Fed.R.Civ.P. 6(a) and 6(e).  Such
objections (and responses thereto) shall be filed with the Clerk
of the Court, with courtesy copies delivered to the chambers of
the Honorable Richard M. Berman, United States District Judge,
500 Pearl Street, Room 650, New York, New York 10007, and to the
chambers of the undersigned, 500 Pearl Street, Room 750, New
York, New York 10007.  Any requests for an extension of time for
filing objections must be directed to Judge Berman.  FAILURE TO
OBJECT WITHIN TEN (10) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS
AND WILL PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140
(1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054
(2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

16

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:   New York, New York
         July 9, 2007

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge


Copy mailed to:

Daniel H. Weiner, Esq.
Natasha N. Reed, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York  10004-1482

Barth & Dreyfuss of
   California, Inc.
2255 North Ontario Street
Burbank, California  91504


                    17